1   BARRY J. PORTMAN
    Federal Public Defender
2   DANIEL P. BLANK
    Assistant Federal Public Defender
3   450 Golden Gate Avenue
    San Francisco, CA  94102
4   Telephone:  (415) 436-7700

5   Counsel for Defendant SOSA CORDERO

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                          )   No. CR 08-90417 MISC JCS
                                            )
11                                          )
    IN THE MATTER OF THE                    )   MOTION TO DISMISS COMPLAINT
12                                          )   UNDER ARTICLE 7 OF
    EXTRADITION OF ALFONSO                  )   EXTRADITION TREATY DUE TO
13                                          )   LAPSE OF TIME
    SOSA CORDERO                            )
14  _____)  Honorable Joseph C. Spero
                                                September 5, 2008
15                                              10:30 a.m.

16                          **INTRODUCTION**

17        Alfonso Sosa Cordero respectfully moves the Court under Article 7 of the extradition treaty

18  between the United States and Mexico to dismiss the complaint against him for provisional arrest

19  with a view toward extradition due to a lapse in time that bars prosecution under the laws of the

20  requested country.

21                          **BACKGROUND**

22        Alfonso Sosa Cordero is a Mexican citizen who has lived predominantly in the United States,

23  specifically in the Bay Area, since approximately 1984.  *See* Declaration of Daniel P. Blank in

24  Support of Motion to Dismiss Complaint Under Article 7 of Extradition Treaty Due to Lapse of

25  Time (filed concurrently with this memorandum) [hereinafter "Blank Decl."] ¶ 2.  Mr. Sosa Cordero

26  has lawful immigration status here based upon a renewable 10-year business visa.  *Id.*  Also

living with him here are his wife and his two U.S. citizen daughters. *Id.* Lately, Mr. Sosa Cordero has spent on average approximately 70 percent of each year at his home in San Rafael and approximately 30 percent of each year in Mexico, often staying at his father's home in Mexico City. *Id.* For example, in 2007 Mr. Sosa Cordero visited Mexico several times in his capacity as trustee of the estate of his sister, who died that year. *Id.*

On August 27, 2008, Mr. Sosa Cordero made his initial appearance in federal magistrate court on a complaint for provisional arrest with a view toward extradition, having learned for the first time that a warrant for his arrest in Mexico issued on June 20, 2001, on the charge of attempted murder based upon alleged conduct on June 1, 2001. *Id.* ¶ 3. In all the times Mr. Sosa Cordero visited Mexico since 2001 there was never any indication of any outstanding warrant against him. *Id.*

The conduct underlying the warrant is alleged as follows:

> On June 21, 2001, . . . David William Lohrey was walking down an alley behind Sanborns restaurant in Tijuana, Mexico. Lohrey later told police that he felt someone pull him from behind. Lohrey recognized this person as SOSA CORDERO, whom he had had problems with in the past and who had previously threatened to kill him. Lohrey told police that SOSA CORDERO started beating him by punching Lohrey in the stomach and saying "Now you are going to die you son of a fucking bitch, this time you are not going to get away from me." Lohrey stated that he lost consciousness as SOSA CORDERO choked him. Lohrey then woke up as Francisco Ochoa Rangel, a man Lohrey had hired as his bodyguard was picking him up. Lohrey and Rangel sought assistance from the police, but the perpetrators fled the scene in a dark blue car that had a California license plate on it.

*Id.* ¶ 3 & Att. A. The complaint further alleges that medical records indicated that Mr. Lohrey was treated for non-life threatening wounds, and that the bodyguard corroborated the claim of his having been attacked but did not identify anyone or give a description of any assailant. *See id.*

Mr. Sosa Cordero flatly denies the charge that he ever attempted to murder, or even assaulted, the complaining witness or anyone else. *Id.* ¶ 4. The complaining witness is known to Mr. Sosa Cordero to be mentally ill, and has a long standing grudge against Mr. Sosa Cordero due to a failed business deal. *Id.* In fact, Mr. Sosa Cordero was not even in Mexico on June 1, 2001. *Id.* He was at home with his family in San Rafael, California, on that date. *Id.* Mr. Sosa Cordero's wife specifically remembers that he was home then because they were preparing for their daughter's

second birthday, which was just a few days later. *Id.* Unfortunately it is not yet clear what other witnesses or records if any will still be available after the seven delay in prosecution to corroborate this claim. *Id.*

## ARGUMENT

Article 7 of the extradition treaty between the United States and Mexico expressly addresses the issue of whether extradition may be granted when as here there has been a lapse in time in the prosecution of the offense: "Extradition shall not be granted when the prosecution or the enforcement of the penalty for the offense for which extradition has been sought has become barred by lapse of time according to the laws of the requesting or the requested Party." Extradition Treaty Between the United States and Mexico, May 7, 1978, art. 7, 31 U.S.T. 5059, T.I.A.S. No. 9565, *available at* 1980 WL 309106.

Here, the prosecution has become barred by lapse of time in two ways according to the laws of the requested Party, the United States, as made applicable by Article 7 of the extradition treaty. First, the prosecution is barred by the statute of limitations. Second, the prosecution is barred by the Sixth Amendment's Speedy Trial Clause.

## I.    LAPSE IN TIME VIOLATES APPLICABLE STATUTE OF LIMITATIONS

The complaint in this case alleges that an arrest warrant issued for Mr. Sosa Cordero in Mexico on June 20, 2001, on the charge of attempted murder. Because the statute of limitations has run on such a charge under the laws of the United States, extradition is barred by Article 7 of the extradition treaty.

The generally applicable statute of limitations provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Under the laws of the United States, attempted murder is undisputably a non-capital offense. Therefore, in the absence of any other exception, the statute of limitations for return of an indictment information on such a charge is five years.

1    Here, with respect to the alleged conduct from June 1, 2001, it does not appear that an

2    indictment or information was ever returned against Mr. Sosa Cordero.  Instead, merely an arrest

3    warrant is alleged to have issued on June 20, 2001.  As more than five years elapsed between the date

4    of the alleged conduct and Mr. Sosa Cordero's arrest, the prosecution is barred under the statute of

5    limitations applicable to such an offense in the United States.  Accordingly, under Article 7,

6    extradition may not be granted, and the Court should dismiss the complaint.

7    Along these lines, numerous courts have held denied extradition under similar circumstances.

8    *See, e.g., In the Matter of the Extradition of Suarez-Mason,* 694 F. Supp. 676, 686-87 (N.D. Cal.

9    1988) (holding that extradition to Argentina on charges of kidnapping was "time-barred by the five

10   years limitations period of § 3282," where the treaty forbid extradition on charges for which

11   prosecution is barred "by lapse of time according to the laws of the requested party or the requesting

12   party"); *see also Caplan v. Vokes,* 649 F.2d 1336, 1340-42 (9th Cir. 1981) (granting writ of habeas

13   corpus and reversing certification of extraditability to the United Kingdom for theft, forgery and false

14   accounting, where the treaty barred extradition due to lapse of time under the law of the requesting or

15   requested country, more than the five years allowable under the applicable statute of limitations had

16   elapsed, and the district court erred in finding that the government had sufficiently proven that the

17   accused was a fugitive to toll the statute of limitations); *cf. Clarey v. Gregg,* 138 F.3d 764, 766-67

18   (9th Cir. 1998) (holding that extradition to Mexico on charges of felony murder was not barred under

19   Article 7 of the treaty because, as a capital offense, felony murder has no statute of limitations

20   pursuant to 18 U.S.C. § 3281).

21   Thus, the Court should find that the applicable statute of limitations under the laws of the

22   United States bars extradition in this case, and dismiss the complaint.

23   **II.     LAPSE IN TIME VIOLATES SIXTH AMENDMENT'S SPEEDY TRIAL CLAUSE**

24   The significant lapse in time in prosecuting Mr. Sosa Cordero also violates the Sixth

25   Amendment's Speedy Trial Clause.  The Sixth Amendment to the United States Constitution

26   guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and

public trial." U.S. Const. amend. VI.  The Sixth Amendment right to a speedy trial is triggered by "arrest, indictment, or other official accusation."  *Doggett v. United States,* 505 U.S. 647, 655 (1992).  The Supreme Court in *Doggett* held that excessive delay between accusation and arrest may warrant dismissal of the indictment under the Sixth Amendment.  *See id.*

The question of whether the "lapse in time" provision in an extradition treaty such as the one here also applies to speedy trial requirements, or just to statutes of limitation, remains unsettled.  *See, e.g., In the Matter of the Extradition of Mylonas,* 187 F. Supp. 716, 721 (N.D. Ala. 1960) (holding that the article in the treaty with Greece barring extradition due to "lapse of time" applies to both statute of limitations and Sixth Amendment speedy trial provisions); *see also* Michael Abbell, Extradition to and From the United States (2004) § 4-3(9) (discussing *Mylonas* with approval).  *But see Yap v. Reno,* 26 F.3d 1562, 1568 (11th Cir. 1994) (holding that the "lapse of time" provision in the treaty with the Bahamas "refers to the running of the statute of limitations and not to a defendant's Sixth Amendment right to a speedy trial").[1]

The Ninth Circuit has not yet squarely decided the issue of whether a "lapse in time" provision may refer to speedy trial requirements as well as statutes of limitations.  In *Kamrin v. United States,* 725 F.2d 1225 (9th Cir. 1984), the Ninth Circuit considered whether extradition was barred pursuant to the Sixth Amendment's Speedy Trial Clause under the applicable provisions of the Australian extradition treaty.  The "lapse of time" provision in that treaty, however, referred only to the laws of the "requesting state" and not of the requested state, unlike the treaty here.  *Id.* at 1227. As a result, the only possible avenue for relief under the Speedy Trial Clause in that case was a separate provision of the treaty establishing "the right to use such remedies and recourses as are

/ / /

---

[1]  The decision in *Yap* has been roundly criticized by scholars in the field.  *See, e.g.,* M. Cherif Bassiouni, International Extradition: United States Law and Practice 780 (5th ed. 2007) (stating that the *Yap* court "confused the questions of statute of limitations, speedy trial and their applications under the treaty" since "[c]learly if a treaty provides for what is tantamount to a 'speedy trial' right under the laws of the requested or requesting state, then clearly it is that treaty provision that trigger the application of the constitutional or statutory right to a speedy trial even though the constitutional and statutory provisions of the subject would not otherwise accommodate that right");

1    provided by [the law of the requested state]." *Id.*  The Ninth Circuit held that the "remedies and

2    recourses" provision did not apply to the Sixth Amendment's Speedy Trial Clause.  *Id.*[2]

3        Unlike the Australian extradition treaty considered by the Ninth Circuit in *Kamrin,* the "lapse

4    of time" provision of the treaty here explicitly refers to the laws of the "requested state" as well as

5    the "requesting state."  In fact, the plain text of Article 7 in this case gives no indication that it is

6    limited to statutes of limitations, broadly referring to the "laws" of the requesting or the requested

7    Party.  Accordingly, this Court dismiss the complaint if the lapse in time in prosecuting Mr. Sosa

8    Cordero violated the Speedy Trial Clause.

9        Whether a delay is sufficiently excessive as to warrant dismissal under the Speedy Trial Clause

10   is to be determined based upon four factors:  1) whether delay before trial was uncommonly long; 2)

11   whether the government or the criminal defendant is more to blame for the delay; 3) whether, in due

12   course, the defendant asserted his right to a speedy trial; and 4) whether he suffered prejudice as the

13   delay's result.  *See id.* at 651 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)).  The prejudice

14   warranting dismissal under this test may be either demonstrable or "presumptive."  *Id.* at 656-57.  On

15   balance, these factors weigh strongly in favor of dismissing the complaint against Mr. Sosa Cordero.

16   **A.    SEVEN YEAR DELAY IN PROSECUTION IS UNCOMMONLY LONG**

17       Delay in prosecution is "'presumptively prejudicial' at least as it approaches one year."

18   *Doggett,* 505 U.S. at 652 n.1.  Here, the delay in prosecuting Mr. Sosa Cordero on the conduct

19   alleged in his arrest warrant exceeds seven years, that is seven times longer than the "bare minimum

20   needed to trigger judicial examination of the claim."  *Id.* at 652.  Accordingly, this factor weighs

21   strongly in favor of dismissal.

22   ///

23

24       [2]  The Ninth Circuit in *The Matter of the Extradition Kraiselburd,* 786 F.2d 1395, 1398-99
25   (9th Cir. 1986), likewise purports to construe a "remedies and recourses" treaty provision, following
     *Kamrin* to hold that the Speedy Trial Clause is not implicated, even though the treaty in that case
26   also had a "lapse of time" provision that referred to the requested as well as the requesting party.
     However, the accused in *Kraiselburd* does not seem to have claimed that the "lapse of time"
     provision itself made the Speedy Trial Clause applicable.  *See id.*

**B.    MR. SOSA CORDERO BEARS NO BLAME FOR THE DELAY**

Mr. Sosa Cordero has lived openly and notoriously, under his own name, predominantly in the United States but with regular visits to Mexico, since the time of the alleged incident in 2001. No effort whatsoever appears to have been made by either Mexico or the United States to alert him to this outstanding warrant. He can bear no blame for the delay in his prosecution.

The facts of the Supreme Court's decision in *Doggett* are instructive in determining what constitutes negligent failure to prosecute. In *Doggett,* the defendant had fled the country when police officers went to his house in North Carolina in March 1980 to arrest him on an indictment charging conspiracy to import cocaine one month after it was filed. *See Doggett,* 505 U.S. at 648-49. The government placed the defendant's name in a U.S. Customs Service computer network to apprehend him upon his reentry, but the network entry expired after six months. *See id.* at 649. In September 1981, the government learned that the defendant was in Panama and forwarded a request that he be expelled to the United States. *See id.* Although Panamanian authorities promised to comply with the request, the defendant was instead freed and permitted to travel to Colombia. *See id.* One year later, the defendant entered the United States unhindered through New York and settled in Virginia, where he lived openly under his own name. *See id.* In September 1988, the defendant was finally arrested on the indictment after a credit check revealed the outstanding warrant. *See id.* at 650.

On these facts, the Court in *Doggett* found that the government did not seek the defendant with due diligence. *See id.* The Court began by noting that "the Government's investigators made no serious effort to test their progressively more questionable assumption that Doggett was living abroad, and, had they done so, they could have found him within minutes." *Id.* at 652-53. The Court concluded that, "[w]hile the Government's lethargy may have reflected no more than Doggett's relative unimportance in the world of drug trafficking, it was still findable negligence, and the finding stands." *Id.* at 653.

As shown by *Doggett,* bad faith on the part of the government is not necessary to warrant dismissal under the Speedy Trial Clause. Mere negligence by the government is sufficient to sustain

the claim.  Here, the failure to prosecute the charge in the complaint against Mr. Sosa Cordero in a timely manner is at a minimum inexcusably negligent.  Accordingly, this factor weighs strongly in favor of dismissal.

### C.    MR. SOSA CORDERO HAS ASSERTED HIS RIGHT TO A SPEEDY TRIAL

With the filing of this motion, just two days after Mr. Sosa Cordero's initial appearance in federal court, when he was for the first time advised on the arrest warrant in question, it cannot be disputed that Mr. Sosa Cordero has asserted his right to a speedy trial.

### D.    MR. SOSA CORDERO SUFFERED PREJUDICE AS THE DELAY'S RESULT

The Supreme Court in *Doggett* explained that "unreasonable delay between formal accusation and trial threatens to produce" many types of harm, including "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence."  *Doggett*, 505 U.S. at 654 (citations omitted).  Of these forms of prejudice, "'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"  *Id.* (citation omitted).

In *Doggett,* the district court held that, since the defendant was unable to demonstrate actual prejudice, the indictment need not be dismissed.  *See id.* at 650.  However, the Supreme Court reversed the conviction on the grounds that the prejudice to the defendant was "presumptive" due to the length of the delay and the negligence of the government.  *See id.* at 657-58.  Here, the prejudice to Mr. Sosa Cordero, like the defendant in *Doggett,* is presumptive.  Moreover, unlike the defendant in *Doggett,* Mr. Sosa Cordero has actually suffered demonstrable prejudice.  Accordingly, this factor weighs strongly in favor of dismissal of the indictment.

#### 1.    Delay Was Presumptively Prejudicial to Mr. Sosa Cordero

The Supreme Court in *Doggett* clarified that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim."  *Id.* at 655.  The Court had earlier "explicitly recognized that impairment

1   of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion

2   of exculpatory evidence and testimony 'can rarely be shown.'" *Id.* (quoting *Barker v. Wingo,* 407

3   U.S. at 532). Thus, the Court explained, "we generally have to recognize that excessive delay

4   presumptively compromises the reliability of a trial in ways that neither party can prove or, for that

5   matter, identify." *Id.*

6          In weighing whether the presumptive prejudice warranted dismissal of the indictment in

7   *Doggett,* the Supreme Court considered three scenarios. Where the government pursues a defendant

8   "with reasonable diligence from his indictment to his arrest," a speedy trial claim will generally fail.

9   *Id.* at 656. At the other end of the spectrum, a speedy trial claim where the government intentionally

10  delays "to gain some impermissible advantage" will almost always succeed. *Id.* The Supreme Court

11  has stressed that "official bad faith in causing delay will be weighed heavily against the

12  government," and a lengthy bad-faith delay "would present an overwhelming case for dismissal." *Id.*

13  Between diligent prosecution and bad-faith delay, "official negligence in bringing an accused to trial

14  occupies the middle ground." *Id.* at 656-57.

15         In this case, there is no evidence of bad faith. However, even if the Court finds that the delay

16  was merely negligent, the prejudice is still presumptive and dismissal is warranted due to length of

17  delay in prosecuting Mr. Sosa Cordero given the very simple nature of the charges against him.

18         Along these lines, the Supreme Court in *Doggett* found that the six-year portion of the post-

19  accusation delay that was attributable to the government's negligence in prosecuting the defendant

20  on his indictment charging conspiracy to import cocaine "far exceeds the threshold needed to state a

21  speedy trial claim; indeed, we have called shorter delays 'extraordinary.'" *Id.* at 657-58 (quoting

22  *Barker,* 407 U.S. at 533 (finding five year delay to be "extraordinary")). Since the government's

23  negligence in *Doggett* caused "delay six times as long as that generally sufficient to trigger judicial

24  review," and "the presumption of prejudice, albeit unspecified" was "neither extenuated, as by the

25  ///

26  ///

defendant's acquiescence nor persuasively rebutted,"[3] the Supreme Court held that the defendant's conviction must be reversed under the Speedy Trial Clause. *Id.* at 658 (citations and footnotes omitted).

Following *Doggett,* the Ninth Circuit similarly held that the conviction of a defendant involved in a fraudulent passport scheme and heroin conspiracy must be dismissed due to pretrial delay of five years. *See United States v. Shell,* 974 F.2d 1035, 1035-36 (9th Cir. 1992). The Ninth Circuit explained the reasons for the dismissal as follows:

> Five years delay attributable to the government's mishandling of Shell's file, like the eight year delay in *Doggett,* creates a strong presumption of prejudice.
> Nor has the government "persuasively rebutted" the presumption of prejudice. It suggests that because Shell has conceded that most of the essential witnesses and documentary evidence is still available, the presumption of prejudice is rebutted. We are not persuaded. Although the Court did not define precisely what type of evidence must be shown to rebut the presumption, we have little doubt that the government has failed to meet its burden here.

*Id.*

The delay of seven years in the prosecution of Mr. Sosa Cordero is even longer than the delays involved in *Doggett* and *Shell.* Moreover, the simple charge against Mr. Sosa Cordero of attempted murder based upon an alleged altercation outside a bar in Tijuana is qualitatively different than the conspiracy and fraud charges involved in those cases. Along these lines, the Ninth Circuit recently reiterated that "the delay that can be tolerated for ordinary street crime is considerably less than for a serious, complex conspiracy charge." *United States v. Tanh Huu Lam,* 251 F.3d 852, 856 (9th Cir. 2001) (citation omitted). Thus, the delay of seven years in prosecuting Mr. Sosa Cordero is more than sufficiently long to warrant a presumption of prejudice, since the charge against him is the most "ordinary street crime."

Along these lines, the district court in *United States v. Donahue,* 1994 WL 904692 (S.D. Fla. Dec. 7, 1994), granted the defendant's Speedy Trial Clause motion to dismiss an indictment charging

---

[3] The Court explained that "[w]hile the Government ably counters Doggett's efforts to demonstrate particularized trial prejudice, it has not, and probably could not have, affirmatively proved that the delay left his ability to defend himself unimpaired." *Doggett,* 505 U.S. at 658 n.4 (citation omitted).

two cocaine conspiracies, importation and possession with intent to distribute, after a post-accusation delay of forty-four months found to be presumptively prejudicial.  As in *Doggett,* the defendant in *Donahue* was in and out of the country and in and out of custody during the time following the indictment.  *See id.* at \*1-\*2.  However, while out of custody, the defendant lived openly under his true name.  *See id.* at \*2.

The district court noted that, "even if the time for counting does not begin until Donahue's release from Bahamian custody, some 20 months elapsed before Donahue's arrest on the outstanding warrant."  *Id.*  The court found that "[t]his 20 month post accusation delay in arrest is presumptively prejudicial."  *Id.*  The court further found that the delay in arresting the defendant was "due entirely to the negligence of law enforcement," and that there was no evidence that the defendant "attempted to elude law enforcement during the time that the warrant was pending for his arrest."  *Id.* at \*6.  Finally, the court noted that, while it was not persuaded that the defendant had suffered actual prejudice, "the presumptive prejudicial delay has not been overcome by any evidence produced by the government."  *Id.* at \*7.  Accordingly, the court dismissed the indictment under the Speedy Trial Clause.  *See id.* at \*8.

Here, the seven year delay in prosecuting Mr. Sosa Cordero is likewise significant:  seven times longer than the minimum bench mark delay.  Moreover, Mr. Sosa Cordero bears no blame for the delay.  Furthermore, Mr. Sosa Cordero has timely asserted his right to a speedy trial, and did not attempt to evade prosecution or in any way acquiesce to the delay.  Finally, for the reasons set forth above, Mr. Sosa Cordero was presumptively prejudiced by the delay.  As a result, the Court should dismiss the complaint for extradition against Mr. Sosa Cordero.  *See Strunk v. United States,* 412 U.S. 434, 440 (1973) (noting that dismissal of the indictment with prejudice is "the only possible remedy" for a violation of the Speedy Trial Clause (citation and internal quotation marks omitted)).

**2.     Mr. Sosa Cordero Suffered Actual Prejudice From the Delay**

In the alternative, even if the Court determines that Mr. Sosa Cordero is not entitled to a presumption of prejudice from the seven year delay, the Court should nevertheless dismiss the

1    complaint since Mr. Sosa Cordero has suffered actual and demonstrable prejudice.  Specifically, Mr.

2    Sosa Cordero has lost the opportunity to find whatever witnesses and exculpatory evidence existed at

3    the time that the arrest warrant issued.  *See* Blank Decl. ¶ 4.  Although Mr. Sosa Cordero's wife

4    clearly recalls that he was at home in San Rafael at the time in question in this case, she may be

5    impeached for her bias toward him.  Due to the fading of memories and even possible deaths of

6    potential witnesses, there is now no realistic opportunity to investigate additional alibi witnesses who

7    could not be as easily impeached.  In addition, records that would have corroborated a claim that Mr.

8    Sosa Cordero was here at the time in question are likely now to be unavailable.

9        As noted by the Supreme Court, demonstrating actual prejudice with detailed precision in this

10   situation would be almost impossible.  *See Doggett,* 505 U.S. at 655 ("impairment of one's defense

11   is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory

12   evidence and testimony 'can rarely be shown'" (quoting *Barker v. Wingo,* 407 U.S. at 532)).

13   Nevertheless, taken together, the facts articulated above are sufficient to demonstrate actual prejudice

14   from the seven year delay in prosecuting Mr. Sosa Cordero.

15       Along these lines, the district court in *United States v. Shelton,* 820 F. Supp. 461 (W.D. Mo.

16   1992), granted the defendant's Speedy Trial Clause motion to dismiss an indictment charging drug

17   distribution after a post-accusation delay of two years upon a finding of actual prejudice.  The court

18   found that the delay in prosecuting the indictment on an "ordinary street crime," of which two years

19   was post-indictment, was sufficient trigger the speedy trial analysis and that the government had

20   failed to demonstrate that the delay was reasonable.  *See id.* at 465-66.

21       With respect to the prejudice prong, the government in *Shelton* argued that because the

22   defendant could remember where he lived and what kind of car he drove at the relevant time, he

23   failed to make a showing of actual prejudice.  *See id.* at 466.  The district court rejected the

24   government's argument, citing *Doggett* for the proposition that prejudice may be presumed since the

25   two-year post-indictment delay in that case "was twice as long as that generally sufficient to trigger

26   review."  *Id.* at 467.

The district court in *Shelton* further noted in the alternative that "[t]he defendant has come forward and supported the presumption of prejudice that accompanies such a delay through his testimony" alleging that his own memory of the events has faded and that he is therefore unable to assist counsel in his own defense. *Id.* The district court further found that "the government's attempt to persuasively rebut that showing was unconvincing." *Id.* As a result, the court held that the defense was actually prejudiced by the two-year delay in prosecution caused by the government's negligence and dismissed the indictment. *See id.*

Similarly, the district court in *United States v. Wiggins,* 211 F. Supp.2d 81 (D.D.C. 2002), granted the defendant's Speedy Trial Clause motion to dismiss an indictment charging felon firearm possession after a post-accusation delay of three years upon a finding of actual prejudice. The district court found that the three-year delay was sufficient to trigger the speedy trial analysis and that the government negligently caused the delay by making no effort to execute the warrant for the defendant's arrest. *See id.* at 85. The court further found that the defendant had demonstrated actual prejudice. *See id.* at 86-87.

Specifically, the defense counsel in *Wiggins* proffered that, if the case had been timely prosecuted, "she would have taken steps to investigate the factual allegations made by the government." *Id.* at 84. For example, "she would have asked her investigator to search for and interview possible witnesses at the Metro Station stop where Wiggins was arrested." *Id.* However, after the passage of three years, "defense counsel concluded that her investigator would be unlikely to find any witnesses, and if such witnesses were found, that their specific memories would have faded such that the defense would be unlikely to present their testimony." *Id.*

Citing *Doggett,* the district court in *Wiggins* recognized that "proving specific prejudice to the defendant may become more difficult the longer the delay." *Id.* at 87. Along these lines, the court noted:

> More than three years after the incident, defendant is unable to determine what witnesses, if any, were present at the time of his arrest; further he cannot prove what benefit might have been derived from the testimony of any additional witnesses.

1   *Id.*  Nevertheless, the court found that the defendant had adequately demonstrated actual prejudice

2   and, upon weighing the factors identified by *Doggett,* ruled that the indictment must be dismissed

3   under the Speedy Trial Clause.  *See id.*  Here, as noted above, Mr. Sosa Cordero has likewise lost the

4   opportunity to find whatever witnesses and exculpatory evidence existed at the time that the warrant

5   issued.

6          Thus, even if the Court determines that the presumption of prejudice does not apply in this

7   case, the Court should find that Mr. Sosa Cordero has adequately demonstrated actual prejudice from

8   the seven year delay in his prosecution.  Moreover, balancing the remaining factors, the Court should

9   hold that his Sixth Amendment right to a speedy trial was violated and dismiss the complaint.

10                                      **CONCLUSION**

11         For the aforementioned reasons, the Court should dismiss the complaint under Article 7 of the

12  extradition treaty due to lapse in time.

13  Dated:  August 29, 2008

14                                  Respectfully submitted,

15                                  BARRY J. PORTMAN
                                    Federal Public Defender
16
                                         /S/
17
                                    DANIEL P. BLANK
18                                  Assistant Federal Public Defender

19

20

21

22

23

24

25

26