BARRY J. PORTMAN
Federal Public Defender
DANIEL P. BLANK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant SOSA CORDERO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ALFONSO SOSA CORDERO | No. CR 08-90417 MISC JCS <br><br> MEMORANDUM IN SUPPORT OF APPLICATION FOR BAIL <br><br> Honorable Joseph C. Spero <br> September 5, 2008 <br> 10:30 a.m. |

**INTRODUCTION**

Pursuant to the Extradition Treaty Between the United States and Mexico, May 7, 1978, 31 U.S.T. 5059, T.I.A.S. No. 9565, *available at* 1980 WL 309106, and the Fifth Amendment of the United States Constitution, Alfonso Sosa Cordero respectfully moves this Court to set reasonable conditions for his release from custody pending any extradition hearing.

The Extradition Treaty authorizes the contracting states to request provisional arrest only in cases of "urgency." Extradition Treaty, Art. 11(1) ("In case of urgency, either Contracting State may request, through the diplomatic channel, the provisional arrest of an accused or convicted person.") For the reasons set forth in detail in Mr. Sosa Cordero's motion to dismiss due to lapse of time, there is absolutely no urgency here. The arrest warrant from Mexico underlying the complaint in this case issued over seven years ago, on June 20, 2001. To date, the government has offered no explanation for this lapse of time in seeking to prosecute Mr. Sosa Cordero.

For his part, Mr. Sosa Cordero has lawfully and peacefully enjoyed in the Bay Area–with regular visits to Mexico–an open, stable and productive life since 1984, with no prior contacts with law enforcement whatsoever. He is therefore not a "fugitive" as that term is commonly understood. Additionally, he has numerous family members, friends and colleagues in the Bay Area who will attest to his ties to the community and his trustworthiness. There has been no allegation that he is a danger to the community.

Based on the plain language of the Treaty, there is no urgent justification for depriving him of his liberty pending the resolution of his motion to dismiss the complaint due to lapse of time, and other matters attendant to the request for his extradition. Even if the Court determines that Mr. Sosa Cordero's provisional arrest was justified, he should still be released. Mr. Sosa Cordero is not a flight risk or danger to the community, and there are special circumstances which compel his release on bail, including: high probability of success on substantial claims against extradition; likely delay in the appeal process if the motion to dismiss is denied; serious and deteriorating health issues; the availability of bail in Mexico on this charge; and the provisional nature of the arrest.

# ARGUMENT

## I. STANDARD FOR BAIL IN EXTRADITION CASES

### A. "Special Circumstances" Under *Wright v. Henkel* and Its Progeny

The Bail Reform Act, 18 U.S.C. § 3141 et seq., applies only to persons accused of committing crimes against the United States, and the statute that governs international extradition proceedings, Title 18 U.S.C. § 3184, is silent regarding conditions for granting bail. Rather, "the district court's authority to grant bail in extradition cases is rooted in the Supreme Court's decision in *Wright v. Henkel*, 190 U.S. 40 (1903)." *In the Matter of the Requested Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1997).

In *Wright v. Henkel*, the Court recognized a presumption against bail in extradition cases, due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution in the requesting country, but held that the presumption may be overcome where there are "special circumstances" warranting bail. *Wright,* 190 U.S. at 63. In the first reported opinion addressing bail after *Wright v. Henkel*, Judge Learned Hand, then a district court judge, granted bail to the petitioner, who was arrested on a warrant from Canada for larceny the day before a civil trial was to commence in which he was a plaintiff. Judge Hand found that a denial of bail would prejudice the petitioner's ability to consult with counsel in the civil suit, and that this constituted a special circumstance. *In re Mitchell,* 171 F. 289, 290 (S.D.N.Y. 1909).

In the ninety years since *In re Mitchell*, a wide variety of circumstances have been deemed sufficiently "special" to justify bail in the extradition context. *See Kirby*, 106 F.3d at 863-65 (special circumstances shown by combination of five factors, including (1) long delays during extradition proceedings, (2) a similarly-situated fugitive in a related extradition case had been granted bail, (3) requesting country likely would not credit arrestees for time spent in U.S. custody, (4) a 'cloud' hung over the proceedings because a court in an unrelated case had declared the extradition statute unconstitutional, and (5) arrestees, who were Irish Republican Army supporters wanted by Great Britain, enjoyed the "sympathy and concern" of many Americans); *United States v. Kin-Hong*, 83

1  F.3d 523, 524 (1st Cir. 1996) (special circumstances may include a delayed extradition hearing); *In re*
2  *Salerno*, 878 F.2d 317, 317 (9th Cir. 1989) (unusual delay in the appeal process, substantial
3  likelihood of success on the merits, and deteriorating health may be special circumstances); *In re*
4  *Molnar,* 182 F. Supp.2d 684 (N.D. Ill. 2002) (financial assistance provided to aging mother,
5  provisional nature of arrest, possible delay in extradition proceedings that is inherent in provisional
6  arrest, weakness of criminal charges against defendant are special circumstances); *In re Gonzalez,* 52
7  F. Supp. 2d 725 (W.D. La. 1999) (showing by detainees that they have a substantial likelihood of
8  success on the merits at extradition proceeding may constitute special circumstances);  *In re*
9  *Morales,* 906 F. Supp. 1368, 1376 (S.D. Cal. 1995) ((1) extradition complaint was defective, causing
10 delay in proceeding; (2) a Mexican citizen whose extradition was sought by the United States would
11 be entitled to pre-hearing bail; (3) a person charged with fraud in Mexico would be entitled to bail;
12 (4) arrestee was likely to spend additional time before final resolution of case); *In re Extradition of*
13 *Nacif-Borge,* 829 F. Supp. 1210, 1221 (D. Nev. 1993) (special circumstance existed where bail
14 would have been available in requesting country if defendant could post security in amount of eighty
15 percent of alleged tax debt, and where fugitive posed no risk of flight or danger to community);
16 *United States v. Taitz,*  130 F.R.D. 442, 445-47 (S.D. Cal. 1990) (combination of factors amounted to
17 special circumstances, including: health problems experienced by fugitive during incarceration; bail
18 would have been available in requesting country; detention was overly restrictive of fugitive's
19 religious freedom; fugitive made prima facie showing that crime charged abroad might not be an
20 extraditable offense under the treaty; delay attendant in evaluating complex charges); *In re Gannon*,
21 27 F.2d 362 (E.D. Pa. 1928) (availability of bail in requesting country was special circumstance).
22     Other courts have granted bail in extradition cases with no discussion of whether special
23 circumstances were found.  *See, e.g., Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976); *Vardy v.*
24 *United States,* 529 F.2d 404, 405 (5th Cir. 1976); *Shapiro v. Ferradina*, 478 F.2d 894, 898 (2d Cir.
25 1973); *United States v. Clark*, 470 F. Supp. 976, 977 (D. Vt. 1979); *In re Sindona*, 450 F. Supp. 672,
26 675 (S.D.N.Y. 1978); *United States v. Galanis*, 429 F. Supp. 1215, 1231 (D. Conn. 1977); *Jhirad v.*

MEMORANDUM IN SUPPORT OF
APPLICATION FOR BAIL                - 3 -

*Ferrandina*, 355 F. Supp. 1155 (S.D.N.Y. 1973); *rev'd on other grounds*, 486 F.2d 442 (2d Cir. 1973); *Wacker v. Bisson*, 370 F.2d 552 (5th Cir. 1967); *In re Extradition of D'Amico*, 177 F. Supp. 648, 650 (S.D.N.Y. 1959). Reviewing this history, one court appropriately noted that "[i]n the more contemporary reported cases, granting of bail pending completion of the extradition proceedings has been the rule rather than the exception." *Beaulieu v. Hartigan*, 430 F. Supp. 915, 916 (D. Mass. 1977) *vacated in pertinent part after denial of appeal of issuance of certificate of extraditability,* 554 F.2d 1 (1st Cir. 1977).

### B.  Bail Where as Here There Is No "Urgency" Mandating Provisional Arrest

Notwithstanding *Wright v. Henkel* and its progeny, in extradition cases where as here a defendant is arrested without evidence of urgency on a "provisional arrest" warrant, many courts have followed a trend towards greater liberalization of bail, not requiring the demonstration of special circumstances. *See, e.g., United States v. Leitner,* 784 F.2d 159, 160 (2d Cir. 1986) ("[S]ome courts have noted a trend toward liberalization in bail, at least in the provisional arrest context." (citing cases)); *see also In the Matter of the Extradition of Molnar*, 182 F. Supp.2d 684, 688 (N.D. Ill. 2002) (holding that because extradition was under provisional arrest and there was no urgency to defendant's apprehension and incarceration, a more liberal view in determining whether bail should be granted was called for).

Here, the complaint plainly requests Mr. Sosa Cordero's detention pursuant to Article 11 of the Extradition Treaty, entitled "Provisional Arrest." Since there was clearly no urgency in this case, the liberalized trend toward bail should be followed, and he should be released on the grounds that he is not a flight risk or danger to the community. Alternatively, even if the Court applies the more stringent requirement, Mr. Sosa Cordero should be released because of the special circumstances in his case.

## II. SOSA CORDERO IS NOT A FLIGHT RISK OR DANGER TO THE COMMUNITY

This extradition case is one, like many others in which courts have granted bail, where the government's usual rationale for pre-hearing detention is inapplicable. Mr. Sosa Cordero is not a

fugitive, but a lawful resident of the United States. As the Pretrial Services report will show, he has resided with his family in the Bay Area since 1984, and is the owner of a small business focusing on imports of medical supplies. Although that business has suffered in the recent economic downturn, incurring a substantial amount of debt, his ties to the community are strong and stable. Mr. Sosa Cordero has no prior contacts of any kind with law enforcement. He has no history relating to drug or alcohol abuse. And he has relatives, friends and colleagues in the Bay Area who will attest that he is a trustworthy man who will honor his commitments to the Court, and are willing to serve as sureties.

With respect to the level of urgency in this case, it is worth noting that the date of the alleged conduct is June 1, 2001, and the arrest warrant issued on June 20, 2001. As discussed in Mr. Sosa Cordero's pending motion to dismiss due to lapse in time, there does not appear to have been any effort whatsoever to execute this warrant or even alert Mr. Sosa Cordero to its existence, even though he has since then lived openly in the United States and visited Mexico on numerous occasions.

Finally, the weight of the evidence against Mr. Sosa Cordero is extraordinarily slight. The evidence will show that the complaining witness is mentally ill and has a longstanding grudge against Mr. Sosa Cordero. Moreover, the evidence will clearly show that in fact Mr. Sosa Cordero was not even in Mexico on the day in question, but was at home in San Rafael, California, with his family.

Since the requirement of special circumstances is not applicable here, the Court should order Mr. Sosa Cordero released on conditions, pending the resolution of his motion to dismiss and other matters attendant to the request for his extradition, on the grounds that he does not pose a risk of flight or danger to the community.

**III.  SPECIAL CIRCUMSTANCES WARRANT RELEASE OF SOSA CORDERO**

In the alternative, even if the Court determines that Mr. Sosa Cordero is required to demonstrate special circumstances, the Court should still grant release here because several such circumstances individually and collectively warrant his release.

1    First, Mr. Sosa Cordero has raised substantial claims against extradition on which he has a high
2    probability of success. *See, e.g., Salerno v. United States,* 878 F.2d 317, 317 (9th Cir. 1989) (noting
3    that "raising of substantial claims upon which the appellant has a high probability of success" is a
4    special circumstance warranting bail); *see also In the Matter of the Extradition of Ricardo*
5    *Gonzalez,* 52 F. Supp.2d 725, 736-37 (W.D. La. 1999) (granting bail due to substantial likelihood of
6    success on the merits of the extradition hearing).  Mr. Sosa Cordero has already filed a well founded
7    motion to dismiss the complaint due to lapse in time in this case.  Moreover, it appears that the
8    government will have difficulty in meeting the requirement for probable cause, since Mr. Sosa
9    Cordero has a corroborated alibi that he was not even in Mexico on the day in question, and the
10   complaining witness is mentally ill and with a long standing grudge against Mr. Sosa Cordero.

11   Second, in the event that the Court denies the motion to dismiss, Mr. Sosa Cordero will seek
12   appellate review of that decision, likely resulting in a lengthy delay of the proceedings.  *See, e.g.,*
13   *Salerno,* 878 F.2d at 317 (noting that "unusual delay in the appeal process" is a special circumstance
14   warranting bail).  Since some the issues raised in the motion to dismiss are of first impression in the
15   Ninth Circuit, one can expect that the appellate process will be lengthier than normal.

16   Third, Mr. Sosa Cordero has a serious health problem that will continue to deteriorate if held in
17   custody.  *See, e.g., Salerno,* 878 F.2d at 317 (noting that "a serious deterioration of health while
18   incarcerated" is a special circumstance warranting bail); *see also United States v. Taitz*, 130 F.R.D.
19   442, 446 (S.D. Cal. 1990) (ordering bail due to "health difficulties in the form of allergic reactions"
20   to the food in custody).  Specifically, as the Pretrial Services report will show, Mr. Sosa Cordero has
21   a badly injured knee that has required several surgeries and continues to require ongoing physical
22   therapy or else his leg will be permanently disabled.  The special equipment required for this physical
23   therapy is unavailable in custody.

24   Fourth, undersigned counsel has been in touch with the lawyers in Mexico retained by Mr. Sosa
25   Cordero's family to represent him in this matter should he be extradited, and it appears that Mr. Sosa
26   Cordero would have been granted bail on the charge had he been residing in Mexico instead of the

MEMORANDUM IN SUPPORT OF
APPLICATION FOR BAIL                              - 6 -

United States. *See In the Matter of the Extradition of Morales,* 906 F. Supp 1368, 1376-77 (S.D. Cal. 1995) (finding as a special circumstance warranting bail that "the underlying substantive offense is one for which bail is available under Mexican law"); *In the Matter of the Extradition of Nacif-Borge,* 829 F. Supp. 1210, 1221 (D. Nev. 1993) ("Nacif has established by clear and convincing evidence that bail would be available in Mexico on the underlying substantive offense, and that this constitutes a 'special circumstance.'").[1]

Finally, even if it does not obviate the need to demonstrate special circumstances, the provisional nature of Mr. Sosa Cordero's arrest itself qualifies as such a special circumstance. *See, e.g., Molnar,* 182 F. Supp.2d at 688.

Any one of these factors, standing alone, would justify Mr. Sosa Cordero's release. However, there need not be one overriding circumstance justifying an extraditee's release on bail. Rather, the cumulation of several factors can constitute special circumstances that justify bail in extradition proceedings. *See, e.g., Nacif-Borge,* 829 F. Supp. at 1216.

Finally, to the extent that the Court has lingering concerns about flight risk, there are conditions that will assure the Court that Mr. Sosa Cordero will appear as required for all court proceedings and to surrender if ordered to do so. Mr. Sosa Cordero and his family are willing to post everything they own as security. Mr. Sosa Cordero is willing to surrender any travel documents or passport that has not already been seized. He is willing to undergo electronic monitoring. He is willing to report to Pretrial Services as often as is deemed appropriate. His family members, friends and supporters are willing to serve as sureties. In the absence of countervailing considerations to warrant an infringement on Mr. Sosa Cordero's due process right not to be deprived of his liberty, *see Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."), the Court to should set reasonable conditions for his release.

---

[1] Mr. Sosa Cordero expects to have a more definite statement on this issue by the time of the hearing.

MEMORANDUM IN SUPPORT OF
APPLICATION FOR BAIL                - 7 -

**CONCLUSION**

For the aforementioned reasons, the Court should order Mr. Sosa Cordero released on conditions pending the resolution of his motion to dismiss and other matters attendant to his requested extradition.

Dated: September 3, 2008

                                        Respectfully submitted,

                                        BARRY J. PORTMAN  
                                        Federal Public Defender

                                              /S/

                                        DANIEL P. BLANK  
                                        Assistant Federal Public Defender